UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SAMANTHA O'NEIL

          Plaintiff,

          -v-                   6:23-CV-1254 (DNH/ML)

HAMILTON COLLEGE,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                  OF COUNSEL:

WARD ARCURI LAW FIRM      ZACHARY C. OREN, ESQ.
Attorneys for Plaintiff
185 Genessee Street, Suite 1201
Utica, NY 13501

FESTINE NELSON LLP        KATHRYN M. FESTINE, ESQ.
Attorneys for Plaintiff
258 Genessee Street, Suite 307
Utica, NY 13502

BOND SCHOENECK          COLLIN M. CARR, ESQ.[1]
   & KING, PLLC          SUZANNE M. MESSER, ESQ.
Attorneys for Defendants     JONATHAN B. FELLOWS, ESQ.
One Lincoln Center
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

---

   [1] Collin Michael Carr is listed as lead attorney in this matter but is also shown on the docket as an attorney in Syracuse University's Office of University Counsel.  While no notice of withdrawal was filed in this matter, the Clerk is directed to terminate the attorney in the case caption.

## <u>DECISION and ORDER</u>

## I. <u>INTRODUCTION</u>

On October 10, 2023, plaintiff Samantha O'Neil ("O'Neil") filed this employment discrimination action against defendants Hamilton College ("Hamilton"), Karen Leach, Roger Wakeman, Lucy Burke, Nathan Goodale, Jeff Landry, Lisa Magnarelli, Terry Martinez, Adina Mujic, Joe Shelley, Steve Stemkoski, Caz Ullem, and David Wippman alleging violations of her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the Americans with Disabilities Act of 1990 (the "ADA").[2]  *See* Compl., Dkt. No. 1.

On August 29, 2025, defendant moved for summary judgment. Hamilton's Mot. Summ. J., Dkt. No. 67.  That motion has been fully briefed and will be considered on the basis of the submissions and without oral argument.  Dkt. Nos. 1, 67, 75, 77.

---

[2]  Since the filing of this action, the parties have stipulated to the dismissal of defendants Karen Leach, Roger Wakeman, Lucy Burke, Nathan Goodale, Jeff Landry, Lisa Magnarelli, Terry Martinez, Adina Mujic, Joe Shelly, Steve Stemkoski, Caz Ullem, and David Wippman (collectively the "Individual Defendants"), which was approved, leaving Hamilton as the sole remaining defendant.  Dkt. Nos. 23, 27.

## II. **BACKGROUND**[3]

On January 7, 2020, O'Neil, a female, was hired by Hamilton to work as a Discovery Team Coordinator. Pl.'s Opp'n to Def's SOMF, Dkt. No. 75-18 ¶¶ 50–52. In early 2021, O'Neil became pregnant and gave notice to defendant that February. *Id*. ¶¶ 60–61. Plaintiff's expected delivery date was September 12, 2021. Pl.'s Opp'n to Def.'s SOMF ¶ 73; O'Neil Aff., Dkt. No. 75-18 ¶ 22.

In May 2021, plaintiff discovered potential complications with her pregnancy when she underwent an ultrasound revealing multiple "soft markers" which were "indicative of a child being still born or [having] Down[']s syndrome." Pl.'s Opp'n to Def.'s SOMF ¶¶ 64–65; O'Neil Aff. ¶¶ 14–15. After chromosomal testing, there remained a two percent chance that plaintiff's child would either be born with health defects or that there would be a "non-viable pregnancy/birth." Pl.'s Opp'n to Def.'s SOMF ¶ 65; O'Neil Aff. ¶ 15. This risk caused plaintiff to experience "great anxiety[.]" Pl.'s Opp'n to Def.'s SOMF ¶¶ 67–69; O'Neil Aff. ¶¶ 16–18.

---

[3] For reasons discussed *infra*, the primary issue in this present motion is whether the declarations that accompany defendant's motion were properly filed in accordance with 28 U.S.C. § 1746. *See* Dkt. Nos. 67-1, 67-6, 67-27, 75-18. Thus, for the purposes of setting forth the factual background in this matter, the Court will rely upon plaintiff's affidavit ("O'Neil Aff.") and her response to Hamilton's Statement of Material Facts ("Pl.'s Opp'n to Def.'s SOMF") here. Dkt. Nos. 75-1, 75-18.

In the summer of 2021, and in response to the COVID-19 pandemic, Hamilton announced they would be implementing a policy (the "Policy") mandating that all employees either receive the COVID-19 vaccination or be approved for an accommodation by August 26, 2021.  Pl.'s Opp'n to Def.'s SOMF ¶ 74; O'Neil Aff. ¶ 23.  Hamilton established a COVID-19 Task Force (the "Committee") to make determinations on accommodation requests under the Policy.  *See e.g.*, Pl.'s Opp'n to Def.'s SOMF ¶ 90.  When plaintiff discovered the Policy, she contacted her direct supervisor, Shauna Hirshfield ("Hirshfield"), to determine next steps given the concerns about her pregnancy.  Pl.'s Opp'n to Def.'s SOMF ¶¶ 57, 75; O'Neil Aff. ¶¶ 10, 16, 24.  Hirshfield suggested that O'Neil request a delayed vaccination after she completed her pregnancy, which plaintiff had no issue doing.  Pl.'s Opp'n to Def.'s SOMF ¶¶ 76–77; O'Neil Aff. ¶¶ 25–26.

On July 8, 2021, plaintiff contacted Hamilton's Human Resources Department ("HR") to request an accommodation.  Pl.'s Opp'n to Def.'s SOMF ¶ 78; O'Neil Aff. ¶ 27.  On July 20, 2021, HR responded by asking plaintiff to provide a doctor's note supporting her request.  Pl.'s Opp'n to Def.'s SOMF ¶ 79; O'Neil Aff. ¶ 29.  The following day, plaintiff responded to Hamilton by providing a doctor's note supporting her request for a delayed vaccination accommodation from her primary care provider, Dr. Regina Farrell, M.D. ("Dr. Farrell").  Pl.'s Opp'n to Def.'s SOMF ¶¶ 62, 80; O'Neil Aff. ¶¶ 12, 30–

- 4 -

31. According to plaintiff, Dr. Farrell's note provided Hamilton with a medical opinion supporting plaintiff's preference towards waiting until completing her pregnancy before receiving being vaccinated, along with an offer to be contacted by phone to answer any medical questions Hamilton might have. Pl.'s Opp'n to Def.'s SOMF ¶¶ 80–82; O'Neil Aff. ¶¶ 30–31.[4][5]

On July 28, 2021, after not hearing back from Hamilton, plaintiff sent defendant a follow-up e-mail. Pl.'s Opp'n to Def.'s SOMF ¶ 89. Thereafter, she received a response from HR both advising that her request was forwarded to Steve Stemkoski ("Stemkoski"), a member of the Committee, and confirming that the Committee would be reviewing her request. *Id.* ¶ 90. Between July 30, 2021 and August 2, 2021, plaintiff alleges that Stemkoski informed her that the Committee would be denying her accommodation request because Dr. Farrell's note "lacked supporting documentation." *Id.* ¶ 91.

Plaintiff then requested that Stemkoski to explore further with the Committee whether, in the alternative, she could continue working remotely

---

[4] While it is unclear how plaintiff relayed this to defendant, if at all, she also alleges that "[a] second Medical Doctor Jonathan Henderson [. . .] advised [her] not to get the vaccine while pregnant." Pl.'s Opp'n to Def.'s SOMF ¶ 85.

[5] Plaintiff argues her accommodation request was "minimal" because the request amounts to being permitted to work from home and not obtain the COVID-19 vaccine from August 26, 2021, when the Policy went into effect, until she gave birth on September 6, 2021—just twelve days after she was ultimately fired by defendant on August 25, 2021. Pl.'s Opp'n to Def.'s SOMF ¶¶ 86–87; O'Neil Aff. ¶¶ 46, 58.

and receive the vaccine after completing her pregnancy, after which she would return to work.  Pl.'s Opp'n to Def.'s SOMF ¶ 93.  But O'Neil contends that "defendants failed to engage in an interactive process to reach an appropriate accommodation[.]"  *Id.* ¶ 95.  Instead, defendant instructed plaintiff to provide additional information regarding her pregnancy to the Committee.  *Id.*  Further, in the event that Hamilton now required her to immediately start working in-person, plaintiff alleges offering to get tested regularly and wear protective face coverings until completing her pregnancy and receiving the vaccine.  *Id.* ¶ 96.

On August 13, 2021,[6] Stemkoski sent plaintiff an e-mail stating: "[a]fter a thorough request of your application, the committee has denied your medical exemption request.  As a result of this denial[,] you can choose to get vaccinated or work with [HR] on various separation options."  *Id.* ¶ 97.  On August 18, 2021, plaintiff further discussed her accommodation request with Stemkoski.  *Id.* ¶ 99.  On August 20, 2021, plaintiff sent defendant another e-mail to request "a written decision concerning her denied requests for accommodation[.]"  *Id.* ¶ 100.  But plaintiff contends that, "most likely in an effort to conceal their discriminatory and retaliatory motives, [d]efendants never provided the written decision" she sought.  *Id.* ¶ 101.  Instead, "on

---

[6]  While plaintiff describes this as having occurred on August 13, 2023, the Court will more properly construe this as having taken place on the same date in 2021.

August 25, 2021, [p]laintiff was abruptly terminated while working with a student." *Id.* ¶ 102.  Plaintiff again requested a written decision from defendant but received no reply.  *Id.* ¶ 103–4.

Despite denying her request, plaintiff argues that Hamilton "did accommodate other non-pregnant employees by allowing them to not get vaccinated but instead to submit to COVID testing twice a week[.]"  Pl.'s Opp'n to Def.'s SOMF ¶ 109.  Although O'Neil contends she demonstrated she "could perform the essential functions of her job" and having "work[ed] from home for over a year[,]" plaintiff claims "[n]o pregnant women were accommodated under [d]efendant's mandatory COVID vaccination policy, while certain non-pregnant employees were."  Pl.'s Opp'n to Def.'s SOMF ¶ 117.

In support of her claims that pregnant employees were treated less favorably under the Policy, plaintiff has included allegations regarding certain comparator employees at Hamilton who also submitted accommodation requests.  Pl.'s Opp'n to Def.'s SOMF ¶¶ 117–136.  First, plaintiff alleges that EE10[7], another pregnant employee, also requested

---

[7] Comparator employees are referenced in the pleadings by pseudonyms, *i.e.*, EE5, EE6, EE9, EE10.

accommodation on the basis of her pregnancy but was denied.[8] *Id.* ¶ 119. A third pregnant employee "resigned under [d]efendant's mandatory vaccination policy because they did not want to get vaccinated while pregnant." *Id.* ¶ 120. Thus, plaintiff contends that she and EE10, the only two pregnant employees who sought medical exemptions under the Policy, were both denied. *Id.* ¶ 126. Indeed, plaintiff contends that the Committee "recognized" that their COVID-19 policy "disproportionately burdened pregnant women." *Id.* ¶ 121.

In addition, plaintiff asserts she was never provided with a form through which she could request an accommodation from Hamilton while, based on the accommodation requests submitted by other employees, it is evident that "others clearly were" provided with a form. Pl.'s Opp'n to Def.'s SOMF ¶ 122. Plaintiff also alleges that "[o]nly one other [male] employee was even terminated under the policy" but that employee was "rehired after [d]efendant discontinued the policy." *Id.* ¶ 123.

According to plaintiff, non-pregnant employees who submitted an accommodation request to Hamilton under the Policy for medical reasons were successful. *Id.* ¶ 127. For example, employee EE5 successfully obtained

---

[8] In a separate case, EE10 has also brought an employment discrimination suit against the defendant. *See Colangelo v. Hamilton College,* 6:23-CV-1464 (DNH/ML). Plaintiff requested that these matters be consolidated, which was denied and affirmed on appeal by this Court. *See* Dkt. Nos. 29, 30, 33, 43, 44, 49, 61.

an exemption under the Policy when they submitted a doctor's note citing their allergies. *Id.* Plaintiff contends that while EE5's doctor's note offered no greater detail than the one that she submitted, Hamilton still granted EE5's accommodation request and allowed them to work from home. *Id.* ¶ 129–30.

Another employee, EE6, sought an accommodation under the Policy due to a hip replacement and submitted a doctor's note, which plaintiff contends was accepted without any requests from defendant for additional documentation. Pl.'s Opp'n to Def.'s SOMF ¶¶ 131–33. Unlike plaintiff, EE6 was permitted to delay vaccination until after their hip surgery. *Id.* Finally, plaintiff contends that employee EE9 was also granted an accommodation for medical reasons.[9] *Id.* ¶ 134–35. According to plaintiff, no pregnant employees were granted an accommodation under the Policy but "all of the other accommodation [requests] presented to the Committee were granted" as to "other, non-pregnant Hamilton College employees." *Id.* ¶ 136.

Plaintiff brings claims for: 1) discriminatory discharge in violation of Title VII, the ADA, and the NYSHRL; 2) failure to accommodate in violation of Title VII, the ADA, and the NYSHRL; and 3) retaliatory discharge in violation of Title VII, the ADA, and the NYSHRL. *See* Compl, Dkt. No. 1.

---

[9] O'Neil argues that defendant has not produced "any doctor's note received from EE9" in support of their approved accommodation request. Pl.'s SOMF ¶ 135. Plaintiff argues this makes "it impossible to compare it the doctor's note" she provided to Hamilton. *Id.*

## III.    LEGAL STANDARD

Under Rule 56, summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674, 686 (2d Cir. 2023) (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017)).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Hilton v. Wright*, 928 F. Supp. 2d 530, 544 (N.D.N.Y. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In reviewing the motion, the district court must 'draw all reasonable inferences against the party whose motion is under consideration.'" *Lake v. HealthAlliance Hosp. Broadway Campus*, 738 F. Supp. 3d 208, 215 (N.D.N.Y. 2024) (quoting *Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir. 2022)). But "[a] question of material fact does not exist merely because plaintiff disagrees with the deposition testimony and documentary evidence produced by defendant[s]." *Turner v. Delta Airlines, Inc.*, 658 F. Supp. 3d 123, 131 (E.D.N.Y. 2023) (citing *Anderson*, 477 U.S. at 247–48).

After a moving party carries its burden under Rule 56(c), its opponent then "must provide more than conclusory allegations … and show more than

some metaphysical doubt as to the material facts." *See Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*, 147 F.4th 73, 85 (2d Cir. 2025) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)). Instead, "[t]he non-moving party 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" *Murrell v. Moscicki*, 790 F. Supp. 3d 213, 220 (W.D.N.Y. 2025) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). "Indeed, 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" *Campbell v. Belgard*, 765 F. Supp. 3d 234, 241 (W.D.N.Y. 2025) (quoting *Anderson*, 477 U.S. at 247–48).

"In sum, the ultimate test 'is whether the evidence can reasonably support a verdict in plaintiff's favor.'" *Waltman v. United Servs., Inc.*, 635 F. Supp. 3d 86, 98–99 (D. Conn. 2022) (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Waltman*, 635 F. Supp. 3d at 99 (quoting *Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015)).

## IV.  **DISCUSSION**

Hamilton's motion for summary judgment asserts that plaintiff's Title VII and NYSHRL pregnancy discrimination claims should be dismissed because she cannot prove disparate treatment or disparate impact.  Hamilton's Mem. of Law, Dkt. No. 67–32 at 8–17.[10]  Hamilton also contends that plaintiff's Title VII and NYSHRL failure to accommodate claims based upon her pregnancy must also be dismissed because O'Neil cannot demonstrate she was treated differently under the policy and has not shown she has a pregnancy-related condition.  *Id.* at 18–20.  Hamilton also seeks the dismissal of plaintiff's ADA and NYSHRL discrimination and failure to accommodate claims because O'Neil cannot demonstrate disability.  *Id.* at 21–26.  Finally, Hamilton seeks dismissal of plaintiff's retaliation claims because she has failed to establish but-for causation as to her termination.  *Id.* at 26–29.

Plaintiff has opposed the motion.  Dkt. No. 75.  O'Neil contends that she has: 1) established a *prima facie* case of discriminatory discharge because a non-pregnant person would not have had to choose between their baby and their job as she was forced to; 2) established a *prima facie* case of disparate impact by showing that, while other employees were granted accommodations under the Policy, no pregnant women were; 3) made a *prima*

---

[10]  Pagination corresponds to CM/ECF headers.

*face* showing of a failure to accommodate claim on the basis of pregnancy because defendant accommodated others who were otherwise similarly situated; 4) established pretext on defendant's part by showing that no pregnant employees were accommodated while every other request for a medical accommodation submitted to defendant was approved; 5) set forth sufficient evidence to send her discriminatory discharge claim to the jury; 6) set forth sufficient evidence to send her ADA failure to accommodate claim to the jury; 7) demonstrated that she can establish temporal proximity causation with respect to her retaliation claim; and 8) demonstrated that she can establish causation for her retaliation claim by showing that another employee who requested accommodation based on pregnancy was immediately terminated.  Pl's Opp'n., Dkt. No. 75-19 at 6–28.

Before considering the substantive arguments set forth in Hamilton's motion for summary judgment, however, the Court must first address a deficiency that plaintiff has identified in Hamilton's motion.  *See* Pl.'s Opp'n to Def.'s SOMF ¶1.  In plaintiff's response to defendant's statement of material facts, she asserts that the declarations of now-terminated defendants Karen Leach and Steve Stemkoski, upon which Hamilton's present motion largely relies, cannot be properly considered because they were not made under penalties of perjury as is statutorily required.  *See* Leach Decl., Dkt. No. 67-1; *see also* Stemkoski Decl., Dkt. No. 67-6.  Notably,

- 13 -

Hamilton has not addressed this issue in any of their briefing.[11]  *See* Def.'s Reply Brief, Dkt. No. 77.

28 U.S.C. § 1746 ("§ 1746") governs the substance of unsworn declarations made under penalty of perjury. "[§] 1746 provides that an unsworn matter may be treated as sworn, provided that it is "prove[n] by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, *as true under penalty of perjury*, and dated, in substantially the … form" of the model declaration provided." *In re World Trade Center Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (per curiam) (quoting 28 U.S.C. § 1746) (emphasis in original); *see also LaBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999) (holding that "§ 1746 allows for unsworn declarations to be submitted to a court if it "is subscribed by [the declarant], as true under penalty of perjury, and dated, in *substantially* the following form: ... 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature).'"); *see also Hawke v. ADK Aquatics LLC*, 2026 WL 538931 at *5 (N.D.N.Y. Feb. 26, 2026) ("To be admissible in a summary judgment

---

[11]  The Court also notes that Hamilton's reply declaration filed by counsel similarly fails to adhere to the requirements of 28 U.S.C. § 1746 discussed in depth *infra*.  Dkt. No. 77-1,

proceeding, an affidavit must be sworn to," or, alternatively, a declaration made under penalty of perjury.")

"Parsing the declaration provided in the statute reveals its substantive elements: the declarant must (1) 'declare (or certify, verify, or state),' (2) 'under penalty of perjury,' (3) that the matter sworn to is 'true and correct.'" *In re World Trade Center Disaster Site Litigation*, 722 F.3d at 488. Even substituting "subject to punishment" in for "under penalty of perjury" has been held to be a "substantial departure from the substance of the declaration provided for in § 1746, and thus, does not comply with the statute. *Id.*; *see also Davis v. Grant*, 2 at *1, n.2 (S.D.N.Y. Feb. 8, 2019) ("The Second Circuit has held that the absence of the 'under the penalty of perjury' language constitutes a substantial departure from § 1746."); *see also LeBouef, Lamb, Greene, & MacRae, L.L.P.*, 185 F.3d at 65–66 (reversing summary judgment granted to plaintiff where district court excluded defendant's unsworn letter which "substantially" complied with the requirements of § 1746, because it included the language "[u]nder penalty of perjury, I make the statements contained herein," and was signed and dated, even though it did not include language that the contents of the letter were "true and correct"); *Stair v. Calhoun*, 2015 WL 1966345, at *1 (E.D.N.Y. May 1, 2015) (finding that *pro se* plaintiff's unsworn declaration that did not include the language "true under penalty of perjury" did not meet the requirements of §

- 15 -

1746 because "[i]nclusion of the language 'under penalty of perjury' is an integral requirement of the statute.") (cleaned up); *Ed-George v. Burns*, 2009 WL 2957796, at *2 (N.D.N.Y. Sept. 8, 2009) (finding that although § 1746 "requires only that a declaration [ ] 'substantially'" conform with its requirements, the words "under penalty of perjury" are "expressly required" because without them "it is far from clear to the court that [the] [p]laintiff fully appreciates the consequences, or is impressed with the solemnity of his declaration") (cleaned up).

Indeed, the "[i]nclusion of language of the language 'under penalty of perjury' is an integral requirement of the statute for the very reason that it impresses upon the declarant the specific punishment to which he or she is subjected for certifying to false statements." And "as the Fifth Circuit has observed, omission of the phrase 'under penalty of perjury' would 'allow[] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods.'" *In re World Trade Center Disaster Site Litigation*, 722 F.3d at 488 (quoting *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)). Accordingly, our Circuit has held that, under § 1746, it is required "that a certification of the truth of the matter be expressly made under penalty of perjury" and that "[a]ny other result would be contrary to the plain language of the statute and the objective sought to be advanced by it." *Id.*

- 16 -

Further, when deciding a motion for summary judgment, a court *may* review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. Fed. R. Civ. P. 56(c)(3) (emphasis added). But Rule 56 does not "impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir. 2002) (collecting cases). In addition, Local Rule 56.1(a) requires that the SOMF set forth "a short and concise statement of each material fact about which the moving party contends there exists no genuine issue" and that "[e]ach fact listed shall set forth a specific citation to the record where the fact is established." *See* N.D.N.Y. L.R. 56.1(a). The moving party's failure "to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." *Id.*

Upon review, neither of Hamilton's declarations satisfy the key requirements of § 1746 set forth above. *See* Leach Decl., Dkt. No. 67-1; *see also* Stemkoski Decl. Dkt. No. 67-6. Although each declaration states that it is made "pursuant to 28 U.S.C. § 1746" and is signed and dated by the declarant, both declarations fail to expressly declare, certify, verify, or state under penalty of perjury that the matter sworn to is true and correct. *Supra.* Further, defendant has not addressed the absence of the required elements

- 17 -

for declarations discussed *supra* in their briefing. Accordingly, these declarations will not be considered.

Given that a significant portion of defendant's statement of material facts ("SOMF") relies on these now-rejected declarations that the Court will not take into consideration, defendant has not met their burden under Rule 56(c) and their motion must be dismissed pursuant to the Local Rules of this District. *See* Def.'s SOMF, Dkt. No. 67-31. Even if Hamilton's declarations were accepted, the Court still finds that plaintiff tends to show a likelihood of success in raising genuine issues of material fact with respect to her claims.

In light of the deficiencies present in defendant's motion, the Court will not delve into the record here to evaluate each of plaintiff's claims or directly highlight each genuine issue of material fact that may exist. But at a minimum, the Court does find that plaintiff's opposition briefing tends to support a finding that a genuine issue of material fact exists as to whether, under the Policy, pregnant employees who sought accommodations for medical reasons were treated differently than non-pregnant employees. First, and as discussed *supra*, plaintiff alleges that, after an ultrasound, she discovered soft markers indicating a two percent chance her child would be born with certain birth defects. Pl.'s Opp'n to Def.'s SOMF ¶ 64–65; O'Neil Aff. ¶ 14–15. Plaintiff also alleges that she was treated less favorably than other non-pregnant co-workers when she sought an accommodation from the

Policy until completing her pregnancy.  Pl.'s Opp'n to Def.'s SOMF ¶¶ 117–136.  When O'Neil provided Hamilton with a doctor's note in support of her accommodation request, Hamilton responded that her request lacked adequate supporting documentation.  *Id*. ¶ 91.  But plaintiff has alleged that other, non-pregnant employees seeking accommodations for medical reasons succeeded in doing so with nothing more than an initial doctor's note in support of their request.  *Id*. ¶¶ 117–136.

"'In 1978, Congress enacted the Pregnancy Discrimination Act' [("PDA")], which amended Title VII to protect employees from pregnancy discrimination." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 103 n. 2 (2d Cir. 2019) (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015)).  "The [PDA] makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Id*. (quoting *Young*, 575 U.S. at 210).  Under the PDA, employers must "treat women affected by pregnancy … the same for all employment-related purposes … as other persons not so affected but similar in their ability or inability to work." *Young*, 575 U.S. at 210 (quoting 42 U.S.C. § 2000e(k)).  Thus, under the PDA "it is discriminatory to treat pregnancy-related conditions less favorably than other medical conditions." *LaBarbera v. NYU Winthrop Hospital*, 527 F. Supp. 3d 275, 289 (E.D.N.Y. 2021) (quoting *Legg v. Ulster Cty*, 802 F.3d 67, 72 (2d Cir. 2016)) (cleaned up).

Plaintiff alleges that through discovery, it was revealed that defendant "did accommodate other non-pregnant employees by allowing them to not get vaccinated by instead to submit to COVID testing twice a week[.]"  Pl.'s Opp'n to Def.'s SOMF ¶ 109.  Despite having demonstrated that she was able to "perform the essential functions of her job" and having "work[ed] from home for over a year[,]" she argues that "[n]o pregnant women were accommodated under [d]efendant's mandatory COVID vaccination policy, while certain non-pregnant employees were."  Pl.'s Opp'n to Def.'s SOMF ¶ 117.

In support of her claim that pregnant employees were treated less favorably than non-pregnant employees, plaintiff points to multiple comparator employees who sought accommodations.  *Id*. ¶¶ 117–34.  Three pregnant employees were affected by defendant's Policy and none successfully obtained an accommodation.  *Id*. ¶¶ 119–126.  Aside from plaintiff, "[o]nly one other employee was even terminated under the policy" and that employee was rehired when Hamilton discontinued the Policy.  *Id*. ¶ 123.  Plaintiff contends that the only other two pregnant employees that sought medical exemptions from defendant were denied.  *Id*. ¶ 126.

Further, plaintiff has alleged that non-pregnant employees who submitted an accommodation request from Hamilton for medical reasons were successful.  *Id*. ¶¶ 127–36.  While Hamilton requested more information from

plaintiff in response to her accommodation request, she alleges that other employees seeking accommodation, despite providing defendant with no greater level of detail in their requests, experienced a lesser degree of scrutiny from the Committee that she received. *Id.* ¶¶ 129–33. In sum, plaintiff argues while no pregnant employees were granted an accommodation under the Policy, "all of the other accommodation [requests] presented to the Committee were granted" as to "other, non-pregnant Hamilton College employees." *Id.* ¶ 136. In addition, plaintiff has called the fairness of defendant's accommodation request process into question, asserting that she was never provided a form to request an accommodation from the defendant while asserting that it was evident that "others clearly were." *Id.* ¶ 122. Plaintiff has also introduced certain Equal Employment Opportunity Commission ("EEOC") guidance which advises that pregnant employees, both generally and in the context of COVID-19 vaccination, may be entitled to "job modifications, including telework" and that "[e]mployers should ensure that supervisors, managers, and human resources personnel know how to handle such requests to avoid disparate treatment in violation of Title VII." Pl's Opp'n. Mem., Dkt. No. 75-19 at 10; *see also* EEOC Guidance, Dkt. No. 75-20 at 38–39, 50–52.

By contrast, Hamilton contends that thirteen employees requested accommodation under the Policy. Def.'s SOMF, Dkt. No. 67-31 ¶ 42.

According to the defendant, six of those requests were for medical reasons—four requests made by men and two submitted by women. *Id.* ¶ 43. Of those six requests, three were granted. *Id.* Only one of the requests was granted for a female employee, EE9, and defendant contends that this request was only granted after the employee provided more detailed information from her medical provider supporting her request. *Id.* Notably, defendant contends that no employees were allowed to submit to COVID testing instead of complying with the Policy, nor was any employee permitted to work remotely instead of receiving the vaccine. *Id.* ¶¶ 46–47.

Thus, the Court finds that plaintiff tends to show that genuine issues of material fact exist as to whether the Policy was, either in its application or effect, discriminatory towards plaintiff. Further, defendant has failed to meet their burden under Rule 56 and their SOMF does not comply with the Local Rules in this District. For these reasons, Hamilton's motion will be denied.

## V. **CONCLUSION**

For the foregoing reasons, the Court finds that Hamilton's motion has not been adequately briefed for the Court to reach a conclusion that no genuine issues of material of fact exist.

Therefore, it is

ORDERED that

- 22 -

1.  Hamilton's motion for summary judgment (Dkt. No. 67) is DENIED;

The Clerk of the Court is directed to terminate the pending motion and update the case caption as directed above.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  June 12, 2026
        Utica, New York.